The **PEOPLE of the State of Colorado,**
**Plaintiff-Appellee,**

v.

**Silas ASHLEY, Defendant-Appellant.**

### No. 82CA0952.

Colorado Court of Appeals,
Div. I.

Feb. 16, 1984.

Rehearing Denied March 15, 1984.

Certiorari Denied Oct. 9, 1984.

**474**

Duane Woodard, Atty. Gen., Charles B. Howe, Chief Deputy Atty. Gen., Richard H. Forman, Sol. Gen., Robert M. Petrusak, Asst. Atty. Gen., Denver, for plaintiff-appellee.

Mellman & Thorn, P.C., Gerald N. Mellman, Denver, for defendant-appellant.

BERMAN, Judge.

Defendant appeals his conviction of sexual assault on a child. We affirm.

Defendant was convicted by a jury of the January 16 and January 17, 1982, sexual assaults on his stepdaughter, who was 13 years old at the time. On the night alleged, the victim was subjected to vaginal intercourse on the living room couch of the victim's and defendant's home. According to the victim, sexual assaults upon her by defendant began when she reached 12½ years of age and continued "almost every night" for some ten to eleven months prior to the incidents with which defendant was formally charged.

During defendant's trial, Dr. Hendrika Cantwell, a pediatrician, was qualified as an expert in the medical aspects of child abuse and neglect. She testified that her examination of the victim two days after the sexual assaults upon which defendant was tried revealed that the victim had "the vaginal opening of an adult female who was probably married, or has had sexual intercourse on a fairly regular basis" for a period of "a year or two" with a male adult.

Based on her study of 287 cases in Denver of alleged sexual assaults on children, in which she found only two cases "unfounded," and based on her opinion that this "finding is repeated in all cases in the literature," Dr. Cantwell also testified that a sexual assault "is not something that children fabricate." Dr. Cantwell further testified that she did not use a "rape kit" on the victim because she "was satisfied that the child was telling me the truth as to who the assailant was."

When asked by the prosecution to explain the basis of her conclusion that the victim's mother was not protective of the child, Dr. Cantwell referred to an October 1978 "report" confirming that the mother was then aware of the stepfather's sexual assaults on the child. Upon defense coun-

sel's objection, the trial court ordered the doctor's statement regarding the 1978 report stricken and the court instructed the jury to disregard the question and answer on this point.

Defendant did not testify at trial, and the trial court obtained no waiver by the defendant of his right to testify. After his conviction, defendant filed a motion for new trial on July 16, 1982. However, it was not until defendant filed his supplemental motion for new trial on November 19, 1982, that he alleged reversible error on the part of the trial court for its failure to advise him of his right to testify or to secure, on the record, defendant's waiver of this right. The trial court denied the supplemental motion.

## I.

Defendant's first contention on appeal is that the portions of Dr. Cantwell's testimony, cited above, which referred to her assessment of the truth or falsity of children's claims of sexual assault, invaded the province of the jury and are, therefore, grounds for reversal. We disagree.

 Testimony in the form of an opinion is not objectionable merely because it embraces an ultimate issue to be decided by the trier of fact. CRE 704. Thus, the fact that credibility of witnesses is an issue ultimately to be determined by the jury does not in and of itself preclude an otherwise qualified expert such as Dr. Cantwell from giving her opinion as to whether children, generally, have the "sophistication" to lie about having experienced a sexual assault. Here, Dr. Cantwell's testimony was especially appropriate in view of defense counsel's attack, in cross-examination, upon the victim's character for truthfulness. *See* CRE 608(a)(2).

Moreover, the trend in Colorado law is to allow expert testimony regarding the capacity of children to fabricate claims that they have been sexually assaulted. *See People in Interest of W.C.L.*, 650 P.2d 1302 (Colo.App.1982); *see also People v. Vollentine*, 643 P.2d 800 (Colo.App.1982) (victim's credibility may be supported by expert tes-

timony rebutting efforts to depict victim as seductive).

*People v. Anderson*, 637 P.2d 354 (Colo. 1981), relied upon by defendant, is inapposite because it deals with the inadmissibility of polygraph results. Here, unlike *Anderson*, there is no possibility that the jury would have placed an almost "mystical" reliance on a particular scientific instrument for truth-finding. Rather, cross-examination of Dr. Cantwell successfully ferreted out the possible flaws of her expert conclusions in a way in which cross-examination might never be able to pierce the lay juror's inflated belief in polygraph infallibility.

## II.

Defendant's second argument is that the trial court erred in allowing Dr. Cantwell's testimony that she was satisfied that "the child was telling me the truth as to who the assailant was." Again, we disagree.

 In assessing the alleged prejudicial effect of any testimony, we must view the testimony in context. Here, Dr. Cantwell's contested statement was in response to defendant's question on cross-examination as to why Dr. Cantwell failed to use a "rape kit." Thus, Dr. Cantwell was merely explaining that she had reason to be certain of the victim's sexual assailant, and that, therefore, a rape kit was relatively unimportant.

Given the fact that defendant's cross-examination "opened the door," to such a response by Dr. Cantwell, this statement does not constitute error. *See People v. Tenorio*, 197 Colo. 137, 590 P.2d 952 (1979). Moreover, since defendant failed contemporaneously to object to Dr. Cantwell's response, and since we find no interference with the substantial rights of the defendant, defendant is not entitled to a reversal. *People v. Graham*, 678 P.2d 1043 (1983); *People v. Taggart*, 621 P.2d 1375 (Colo. 1981).

## III.

 Defendant's third argument is that the trial court erred in denying defendant's

motion for mistrial when Dr. Cantwell referred, in her testimony, to "a report that occurred in October of '78 where the mother confirmed that she was aware that sexual abuse was taking place to her daughter through the stepfather . . . ." Once again, we disagree.

■ A motion for mistrial is addressed to the sound discretion of the court, and should be granted only under circumstances which demonstrate substantial and undue prejudice to the defendant. *People v. Smith,* 620 P.2d 232 (Colo.1980). Here, we find no prejudice to defendant as a result of Dr. Cantwell's statement.

The jury was instructed to disregard the remark regarding the 1978 criminal complaint, and it must be presumed that the jury acted consistently with the instruction given by the court. *People v. Smith, supra; People v. Goff,* 187 Colo. 103, 530 P.2d 514 (1974). Further, inasmuch as the jury was not told that the "report" had resulted in the initiation of criminal proceedings, it was not error for the trial court to fail to instruct the jury that the 1978 criminal complaint against the defendant had been dismissed.

The defendant's speculation concerning the mere possibility of prejudice is insufficient to warrant reversal. *People v. Thomas,* 181 Colo. 317, 509 P.2d 592 (1973).

### IV.

■ The defendant's final contention is that the trial court erred in failing to advise the defendant of his right to testify, and in failing to secure from defendant a knowing and intelligent waiver of that right. Under our opinion in *People v. Curtis,* 657 P.2d 990 (Colo.App.1982) (*cert. granted* January 24, 1983), we agree that the trial court breached its duty to question the defendant to ascertain whether the ostensible waiver made by defendant was made with a complete understanding of his rights; however, we hold that such imprudence on the part of the trial court does not constitute reversible error.

*People v. Curtis, supra,* cited by defendant, is distinguishable from the instant case in several important respects. First, in *Curtis,* the defendant testified in a hearing on his motion for new trial that he did not realize that he could overrule his lawyer's decision not to have him testify. However, here, defense counsel came forward with not so much as a scintilla of evidence showing any dispute between defendant and his counsel over whether to testify or evidencing even the possibility that defendant misunderstood his right to override defense counsel's decision that he not take the stand.

Second, here, unlike in *Curtis,* there is no evidence whatsoever that the defendant was intoxicated at the time of his ostensible waiver. Therefore, here, the defendant's presence in court and his silence upon the close of the case for the defense, in addition to the defendant's express refusal to testify in the post-trial hearing on his motion for new trial, lends particular credence to the state's contention that the defendant's constitutional right to testify was fully protected. *See People v. Palmer,* 631 P.2d 1160 (Colo.App.1981).

Third, defendant stated in a presentence report, which is a part of the record in this case:

"I really didn't get to say much at trial. I should have took the stand in my own defense to deny it. I didn't think it was necessary due to my wife's statements at the time."

Considering this statement and the totality of circumstances previously referred to, we conclude that the defendant was indeed aware of his right to testify, but that it was his strategic determination that his testimony was unnecessary given the testimony of his wife to the effect that the sexual assault had not occurred and that her daughter was lying.

We have reviewed the record and have determined beyond a reasonable doubt that any error which might possibly have affected defendant's constitutional right to testify did not contribute to the verdict and, therefore, constituted, at most, harmless

error. *Chapman v. California,* 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967); *People v. Evans,* 630 P.2d 94 (Colo.App. 1981).

Judgment affirmed.

PIERCE and METZGER, JJ., concur.